21-36024
21-36025

No. 101786-3

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SEP 0 8 2023

DATE        INITIAL

# IN THE SUPREME COURT
# OF THE STATE OF WASHINGTON

CERTIFICATION FROM THE UNITED STATES COURT
OF APPEALS FOR THE NINTH CIRCUIT IN:

UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO
AGUIRRE-URBINA, individually and on behalf of those
similarly situated,

*and*

STATE OF WASHINGTON,

*Plaintiffs-Appellees*,

v.

THE GEO GROUP, INC.

*Defendant-Appellant.*

## DEFENDANT-APPELLANT'S ANSWER TO AMICUS BRIEFS

Charles J. Cooper\*
Michael W. Kirk\*
J. Joel Alicea\*
Joseph O. Masterman\*
Athanasia O. Livas\*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 220-9600
ccooper@cooperkirk.com
\*Admitted Pro Hac Vice

Al Roundtree, WSBA #52857
FOX ROTHSCHILD LLP
1001 Fourth Ave, Suite 4400
Seattle, WA 98154
Phone: (206) 389-3600
aroundtree@FoxRothschild.com

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................. ii

I.     INTRODUCTION ...................................................... 1

II.    ARGUMENT ............................................................ 4

    A.    Even if the WMWA Applied to Detainee Work, VWP Participants Would Be Subject to the Reside-or-Sleep Exception. ......................... 6

    B.    The WMWA Would Not Apply to Comparable Work at Privately Operated State Detention Facilities................................................... 11

III.    CONCLUSION........................................................ 19

i

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page**

*Alaska Airlines, Inc. v. Dep't of Lab. & Indus.*,
531 P.3d 252 (Wash. 2023) .............................................. 5

*Berrocal v. Fernandez*,
155 Wn.2d 585, 121 P.3d 82 (2005) ........................ 3, 7, 8

*Bostain v. Food Express, Inc.*,
159 Wn. 2d 700, 153 P.3d 846 (2007) ........................... 15

*Carranza v. Dovex Fruit Co.*,
190 Wn.2d 612, 416 P.3d 1205 (2018) ........................ 8, 9

*Port of Seattle v. Pollution Control Hearings Bd.*,
151 Wn.2d 568, 90 P.3d 659 (2004) ............................ 4, 5

*Skamania Cnty. v. Columbia River Gorge Comm'n*,
144 Wn.2d 30, 26 P.3d 241 (2001) ........................... 4, 16

**Statutes and Rule**

RCW
§ 49.46.010(3)(j) ............................................................ 6
§ 49.46.010(3)(k) ............................................... 3, 11, 14

Wn. R. App. P. 10.3(e) ....................................................... 2

Wn. R. App. P. 16.16(e)(2) ................................................. 2

## I.     INTRODUCTION

The State of Washington has filed an extra brief in the form of an amicus brief for the Department of Labor & Industries (DLI). The brief addresses two of the three questions that the Ninth Circuit certified to this Court: whether the Washington Minimum Wage Act (WMWA) applies to federal detainees who participated in the voluntary work program (VWP) at the Northwest ICE Processing Center (NWIPC), and, if so, whether the WMWA would also apply to comparable work at privately operated state detention facilities. As the agency responsible for implementing the WMWA, the DLI has already provided insight on the second question. Its previously issued guidance, ES.A.1 (last revised December 29, 2020), 3-ER-491–97, confirms that the WMWA would not apply to work by state detainees for privately operated state detention facilities.

The DLI takes a different position in this litigation. But its brief, signed by the State's Attorney General, adds nothing to the arguments in the State's prior brief, also signed by the State's

Attorney General. For the most part, the DLI simply repeats those (meritless) arguments, which GEO addressed in its prior briefing and which require no further response.[1]

The DLI's brief does also suggest that one section of ES.A.1 supports the conclusion that the WMWA applies to VWP participants, and that another section supports the conclusion that the WMWA would similarly apply to detainee work for any

---

[1] La Resistencia and other parties have also filed an amicus brief in support of Plaintiffs, but this brief gives Plaintiffs no additional support, either. La Resistencia's self-proclaimed mission is to "shut down" the NWIPC. Br. of Amici Curiae La Resistencia et al. at 3 (Aug. 21, 2023). Littered with irrelevant allegations and gratuitous invective based largely on extra-record materials, the brief purports to argue that VWP participants are employees under the economic-reality test but scarcely endeavors to apply that test. *See id.* at 8. The brief's real goal is plainly to malign GEO. That effort is baseless and, in any event, adds nothing to the Court's consideration of the certified questions. The brief's many references to extra-record materials also violate Washington Rule of Appellate Procedure 10.3(a), which applies to amicus briefs and briefs on certified questions, *see* Wn. R. App. P. 10.3(e), 16.16(e)(2). All those references should be disregarded.

The ACLU of Washington's amicus brief in support of Plaintiffs is likewise long on rhetoric and devoid of legal arguments not already addressed in GEO's prior briefing.

2

privately operated state detention facilities. First is the ES.A.1 section on the WMWA's reside-or-sleep exception, RCW 49.46.010(3)(j), which the DLI construes not to apply to all those who reside or sleep at their place of work and thus not to exempt VWP participants from the WMWA. Second is the ES.A.1 section on the WMWA's exception for "[a]ny . . . inmate . . . of a state, county, or municipal . . . detention . . . institution," RCW 49.46.010(3)(k), which the DLI construes to distinguish between publicly and privately operated facilities and not to exempt any voluntary work by detainees at the latter.

For the reasons in GEO's prior briefing, the DLI's limited construction of the reside-or-sleep exception conflicts with this Court's decision in *Berrocal v. Fernandez*, 155 Wn.2d 585, 121 P.3d 82 (2005) (en banc), and would yield absurd consequences. The DLI's limited construction of the inmate exception, meanwhile, conflicts with the statute's plain text and the State's past practice. And despite being in effect the Attorney General's surreply, the DLI's brief responds to none of these points. The

3

statutory text, this Court's precedent, relevant federal caselaw, and the State's past practice all refute Plaintiffs' position on the first two certified questions. So does a plain reading of the DLI's guidance.

## II. ARGUMENT

As an initial matter, the certified questions ask this Court to interpret the WMWA, not to assess any DLI interpretations of the WMWA. Even in cases where an agency's interpretation is at issue, the ultimate question is the best reading of the statute: "[a]n agency's conclusions of law, including its interpretations of statutes, are reviewed de novo under an 'error of law' standard that permits us to substitute our judgment for that of the agency." *Skamania Cnty. v. Columbia River Gorge Comm'n*, 144 Wn.2d 30, 42, 26 P.3d 241, 247 (2001) (en banc).

To be sure, this Court has previously said that, "if an ambiguous statute falls within the agency's expertise, the agency's interpretation of the statute is accorded great weight"; but that is only true "*provided it does not conflict with the*

4

statute." *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 587, 90 P.3d 659, 669 (2004) (en banc) (emphasis added) (internal quotation marks omitted). And the Court has made clear that it "will never defer to ad hoc agency determinations adopted during the course of litigation on the very topic of that litigation." *Alaska Airlines, Inc. v. Dep't of Lab. & Indus.*, 531 P.3d 252, 261 (Wash. 2023) (en banc).

Accordingly, GEO referred in its briefing to the ES.A.1 section on the inmate exception because that section, as written, is consistent with the statutory text and the State's past practice and thus further supports the conclusion that the WMWA would not apply to voluntary detainee work at privately operated state detention facilities. The DLI's contrary position in this litigation conflicts with the "uniformly applied interpretation" of both the reside-or-sleep and inmate exceptions and can therefore claim no deference. *Id.* (internal quotation marks omitted).

5

## A. Even if the WMWA Applied to Detainee Work, VWP Participants Would Be Subject to the Reside-or-Sleep Exception.

The WMWA does not apply to "[a]ny individual whose duties require that he or she reside or sleep at the place of his or her employment." RCW 49.46.010(3)(j). Like the State's initial brief, the DLI's brief emphasizes the words "duties require," arguing that the exception applies only where the worker's duties cause him to reside or sleep at the workplace. According to the brief, that is also how the DLI construes the exception in ES.A.1. In relevant part, the guidance states that "[t]his exemption encompasses . . . [t]hose individuals whose duties require that they reside or sleep at their place of employment," which simply restates the statute. ES.A.1 at 5. The guidance goes on to state:

> Merely residing or sleeping at the place of employment does not exempt individuals from the MWA. In order for individuals to be exempt, their duties must require that they sleep or reside at the place of their employment. An agreement between the employee and employer for the employee to reside or sleep at the place of employment for convenience, or merely because housing is available at the place of their employment, would not meet the exemption.

6

*Id.* The DLI's brief equates "the mere fact that someone is required to reside on-site because of a detention or incarceration" with "merely residing or sleeping at the place of employment" and thus contends that the reside-or-sleep exception does not apply to detainee work under the guidance. Amicus Br. of DLI at 23 (Aug. 10, 2023) (internal brackets omitted) ("DLI Br.").

This Court has already declined to read any causation requirement into the reside-or-sleep exception. In *Berrocal*, the Court held, repeatedly, that the exception's "plain language . . . categorically excludes from the MWA definition of 'employee' those workers who are required to 'reside or sleep' at their workplace," without mentioning whether their duties specifically require them to do so. *Berrocal v. Fernandez*, 155 Wn.2d 585, 588, 121 P.3d 82, 83 (2005) (en banc); *accord id.* at 597 (instructing courts to determine whether a worker "resides or sleeps at the place of his or her employment"); *id.* at 598 ("The plain language of [the exception] excludes . . . those individuals who reside or sleep at their place of employment[.]").

7

The DLI's brief attempts to distinguish *Berrocal* on the ground that the work at issue there (sheepherding) did require residing at the place of work. But the brief nowhere mentions the Court's above-quoted statements. Nor does it acknowledge that its proposed causation requirement would effectively instate the rule advocated by the dissent, and rejected by the Court, in *Berrocal*. *See id.* at 598 (C. Johnson, J., dissenting) (disagreeing that the exception applies "simply because [the workers] live and sleep on the land where they herd sheep"). The brief likewise does not acknowledge or dispute the untenable consequences of holding that VWP participants are employees but are not covered by this exception, in which case they would be entitled to be paid minimum wage for every hour of their detention. *See* Opening Br. of Def.-Appellant on Certified Questions at 46–47 (Apr. 7, 2023) ("GEO Opening Br.").

To the extent the DLI's construction of the reside-or-sleep exception in ES.A.1 conflicts with this Court's construction of the exception in *Berrocal*, the Court's construction controls. *See*

8

*Carranza v. Dovex Fruit Co.*, 190 Wn.2d 612, 625, 416 P.3d 1205, 1213 (2018) (en banc) ("This court has the ultimate authority to interpret a statute.") (cleaned up). But the Court need not resolve any such conflict in this case, because there is no conflict in this context. Even if the DLI's guidance did include the causation requirement proposed in the DLI's brief, and even if VWP participants could otherwise be considered employees, the reside-or-sleep exception would still cover them, since they can participate in the VWP only because they are detained at—and thus reside and sleep at—the NWIPC. To use the DLI's own terms, "what matters" is that they "must sleep or reside on-site to perform their duties." DLI Br. at 21–22; *accord* GEO Opening Br. at 48. By contrast, ES.A.1 states that "[a]n *agreement* between the employee and employer for the employee to reside or sleep at the place of employment *for convenience*, or merely because housing *is available* at the place of their employment, would not meet the exemption." ES.A.1 at 5 (emphases added).

There is no such agreement between a detention facility and detainees who perform work at and for that facility.

The VWP thus does not fit ES.A.1's own example of an arrangement that falls outside the exception. VWP participants are instead more akin to those employees who do meet the exception per ES.A.1. *See id.* at 6 (listing "apartment managers, maintenance personnel, hotel/motel managers, managers of self-storage facilities, and some agricultural workers such as sheepherders"). Just as the *Berrocal* plaintiffs could not be sheepherders without residing at the ranch, Plaintiffs here could not be VWP participants without residing at NWIPC.[2]

To be clear, the reside-or-sleep exception is only one of multiple reasons why the WMWA did not apply to Plaintiffs'

---

[2] The DLI posits that, under the construction adopted by *Berrocal*, the reside-or-sleep exception could "affect many workers beyond the current case." DLI Br. at 24. But *Berrocal* has been on the books nearly twenty years, and the DLI cites no real-world example of its concerns. Regardless, applying the exception to those who are forced to reside at their place of work, as VWP participants are, would not affect those who reside or sleep at their workplace "for convenience" or other reasons. *Id.*

work in the VWP. If VWP participation created an employment relationship (which it did not, *see* GEO Opening Br. at 19–33), and if the inmate exception did not include VWP participants (as the State effectively concedes that it must, *see id.* at 38–40), VWP participants would be exempt from the WMWA under the reside-or-sleep exception. And if any doubt remained, the Court would be required to construe the WMWA, including its reside-or-sleep exception, to avoid rendering it unconstitutional, which would be the case if the WMWA, but not the exception, applied to federal detainees who participated in the VWP. *See id.* at 49–53. The DLI's brief again fails to address this problem with its proposed construction of the exception.

**B.      The WMWA Would Not Apply to Comparable Work at Privately Operated State Detention Facilities.**

The WMWA also does not apply to "[a]ny . . . inmate . . . of a state, county, or municipal . . . detention . . . institution." RCW 49.46.010(3)(k). Like the State's initial brief, the DLI's brief argues that this exception would not apply to inmates at any

11

privately operated state, county, or municipal detention facilities simply because the facilities were privately operated. And like the State's brief, the DLI's brief contends that this interpretation comports with ES.A.1.[3]

The first sentence of the ES.A.1 guidance on the inmate exception states, as relevant, that "[r]esidents . . . of [a] state . . . detention . . . institution are exempt from all MWA protections and are not required to be paid minimum wage if they perform work directly for, and at, the institution's premises . . . under the

---

[3] The DLI's brief appears to be concerned with disputing that the inmate exception itself exempts VWP participants from the WMWA. *See* DLI Br. at 17. To clarify, GEO argues that the VWP is not subject to the WMWA because VWP participation does not create an employment relationship under the economic-reality test. The inmate exception does not change that result. To the contrary: if the exception applies to detainees at facilities owned and operated by the federal government, as the State has conceded and the DLI does not contest, the exception must also apply to federal detainees at privately operated facilities. *See* GEO Opening Br. at 38–40. But the ES.A.1 guidance on the inmate exception is primarily relevant to the second certified question—whether the WMWA would apply to detainee work at privately operated *state* detention facilities—and this brief will discuss the guidance in that context.

12

direct supervision and control of the institution." ES.A.1 at 6. The second sentence adds that, whenever such detainees are "assigned by facility officials to work on facility premises for a private corporation at rates established and paid for by public funds," they "are not employees of the private corporation and would not be subject to the MWA." *Id.* According to the DLI's brief, the second sentence "affirms" that the inmate exception applies to detainee work for a private contractor only when "(1) An individual [is] in 'a state, county or municipal correctional, detention, treatment or rehabilitative institution'— so working within a public facility," is "(2) Assigned by 'facility officials' to perform the work," and is (3) "Paid 'at rates established and paid for by public funds.'" DLI Br. at 18.

The DLI's brief concludes that this exception "does not exempt employees from any privately-operated facility because that fails the first prong of the test." *Id.* at 19. Although the brief does not elaborate on that conclusion, DLI apparently means that detainee work for a private contractor cannot qualify for the

13

exception when the contractor operates the detention facility because such a facility is not a "public facility."

Like the State's initial brief, however, the DLI's brief fails to explain why the exception would turn on whether the facility is *operated* by a public or private entity rather than on whether the work is performed by someone in detention for a violation of state law. The exception explicitly applies to any "*resident*" or "*inmate*" of a "state, county, or municipal . . . detention . . . institution." RCW 49.46.010(3)(k) (emphasis added). But the statute is silent about *who operates* the facility.

Nor does the DLI's brief explain why a "state, county, or municipal" detention facility is any less a "state, county, or municipal" facility simply because it is owned and/or operated by a private contractor. A privately operated state detention facility is a state detention facility. As the DLI's brief does not dispute, there is no such thing as private detention. The DLI thus cannot exclude privately operated detention facilities from the inmate exception's ambit simply by noting that the exception

14

applies to detainees of a "public" or a "governmental facility." DLI Br. at 18. Detainees can be held at such facilities only by virtue of public authority, exercised by the contractor *on behalf of* the government. If the Legislature had meant the exception to apply only to certain types of public detention facilities—those owned and operated by public rather than private entities— GEO's prior briefing compiles statutes showing that the Legislature knew how to do so. *See* GEO Opening Br. at 38–39. It did not do so here, and the DLI's brief once again fails to acknowledge or dispute the point.[4]

To the extent the ES.A.1 guidance on the inmate exception conflicts with the statutory text, the text controls. The guidance

---

[4] The DLI's brief does assert that this Court "confronted a similar situation" in *Bostain*, where the Court rejected a trucking company's argument that the WMWA required overtime pay for interstate truck drivers only for "hours worked in Washington." DLI Br. at 13; *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 710, 153 P.3d 846, 851 (2007) (en banc). But any similarity only cuts against Plaintiffs here. Like the employer in *Bostain*, the DLI attempts to read a distinction into the WMWA's text. The text does not support that public-private distinction just as it did not support an intrastate-interstate distinction.

15

therefore cannot impose a public-private distinction between detention facilities where the plain text of the exception does not. Agency guidance is likewise entitled to no deference when it conflicts with past practice. *See Skamania Cnty.*, 144 Wn.2d at 43. And as detailed in GEO's briefing, again with no response from the DLI, the State has not applied the WMWA to detainee work—including detainee work contemplated in a contract with GEO itself—apparently without objection from the DLI. *See* GEO Opening Br. at 60–61.

As with the reside-or-sleep exception, however, the DLI's construction of the inmate exception in ES.A.1 (as opposed to in its brief for this case) does not conflict with controlling law, *i.e.*, the statute. Like the text of the inmate exception itself, ES.A.1 does not purport to distinguish between publicly and privately operated detention facilities. Under the first sentence of ES.A.1's guidance on this exception, therefore, any participants in a voluntary work program at a privately operated state detention facility would meet the exception as "[r]esidents . . . of [a] state

16

. . . detention . . . institution" who "perform work directly for, and at, the institution's premises . . . under the direct supervision and control of the institution." ES.A.1 at 6.

That the second sentence of this guidance adds that the WMWA also does not apply in a specific circumstance—where state detainees are "assigned by facility officials to work on facility premises for a private corporation at rates established and paid for by public funds"—cannot be read to imply that the WMWA otherwise applies to detainee work at privately operated state detention facilities. *Id.* The guidance does not say that. Nor does the exception's text turn on factors like "rates established and paid for by public funds." And this reading would be incongruous: Not even the DLI attempts to explain why ES.A.1 would generally enforce the WMWA against private companies that receive work from state detainees but make sure to exempt certain companies just because they do not also operate the

17

detention facility.[5]

As a whole, then, the ES.A.1 guidance is better read to reflect the plain meaning of the inmate exception—that the WMWA does not apply to detainee work regardless of whether the facility is publicly or privately operated—while informing certain private companies that receive detainee work but that are not obviously covered by the exception (because they do not operate the facility) that the WMWA will also not be enforced against them. The private character of the purported employer makes no difference in either scenario, because neither ES.A.1 nor RCW 49.46.010(3)(k) draws a public-private distinction.

---

[5] The DLI's brief asserts, without citing any legislative statements, that "the reason the Legislature" purportedly drew a public-private distinction in the inmate exception was that "[g]overnments may be interested for penological or treatment-oriented reasons to encourage work at public facilities" whereas private companies merely "profit." DLI Br. at 12. This assertion neglects the VWP's many benefits for participating detainees. *See* GEO Opening Br. at 10–11. The DLI also fails to explain how it would have the authority to implement the exception for certain private companies in ES.A.1's second sentence if this assertion were correct. But as seen, this assertion is not reflected in the text of the statute.

18

Thus, if the Court reached the second certified question (which it need not), ES.A.1's guidance on the inmate exception confirms that the WMWA would not apply to detainee work at a hypothetical privately operated state detention facility.

## III. CONCLUSION

For the reasons in GEO's prior briefing, the first certified question must be answered in the negative: VWP participants are not "employees" under the WMWA. For that reason, the Court need not reach the second certified question. But if it does, that question must also be answered in the negative: the WMWA would not apply to comparable work at privately operated state detention facilities. And for the reasons herein, the DLI guidance issued in ES.A.1 confirms these answers.

19

RAP 18.17 CERTIFICATION: Defendant-Appellant confirms that this brief, not including text exempt from the total word count, consists of 3,529 words.

Respectfully submitted this 5th day of September, 2023.

**FOX ROTHSCHILD LLP**

*s/ Al Roundtree*
Al Roundtree, WSBA #52857
Fox Rothschild LLP
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
(206) 389-3600
aroundtree@foxrothschild.com

Charles J. Cooper*
Michael W. Kirk*
J. Joel Alicea*
Joseph O. Masterman*
Athanasia O. Livas*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 220-9600
ccooper@cooperkirk.com
*Admitted *Pro Hac Vice*

*Attorneys for Defendant-Appellant*

20

# CERTIFICATE OF SERVICE

I, Marina Krylov, certify that:

1.　　　I am an employee of Fox Rothschild LLP, attorneys for Appellant in this matter. I am over 18 years of age, not a party hereto, and competent to testify if called upon.

2.　　　On September 5, 2023, I served a true and correct copy of the foregoing document on the following parties, counsel of record for Appellees, via electronic mail and addressed as follows:

Adam J. Berger
Lindsay L. Halm
Rebecca Jane Roe
SCHROETER GOLDMARK & BENDER
401 Union Street, Suite 3400 Seattle, WA 98101
Telephone: (206) 622-8000
Email: halm@sgb-law.com
Email: roe@sgb-law.com
Email: hberger@sgb-law.com

Andrea Brenneke
Lane Polozola
Marsha J. Chien
WASHINGTON ATTORNEY GENERAL'S OFFICE
800 Fifth Avenue, Suite 2000 Seattle, WA 98104-3188
Email: andrea.brenneke@atg.wa.gov
Email: lane.polozola@atg.wa.gov

Devin T. Theriot-Orr
OPEN SKY LAW, PLLC
20415 72nd Ave. S., Suite 110 Kent, WA 98032
Telephone: (206) 962-5052
Email: devin@openskylaw.com

Jennifer D. Bennett
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250 San Francisco, CA 94111

Meena Pallipamu Menter
MENTER IMMIGRATION LAW PLLC
4444 Woodland Park Ave. N., Unit 203 Seattle, WA 98103
Telephone: (206) 419-7332
Email: meena@meenamenter.com

Hon. Molly C. Dwyer, Clerk
**(sent by U.S. mail only)**
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

SIGNED at Seattle, Washington, this 5th day of September, 2023.

Marina Krylov

# FOX ROTHSCHILD LLP

## September 05, 2023 - 4:42 PM

## Transmittal Information

**Filed with Court:**          Supreme Court
**Appellate Court Case Number:**   101,786-3
**Appellate Court Case Title:**    Ugochukwu Goodluck Nwauzor et al. v. The Geo Group, Inc.

### The following documents have been uploaded:

- 1017863_Answer_Reply_20230905163532SC562697_6177.pdf
  This File Contains:
  Answer/Reply - Other
  *The Original File Name was Defendant Appellant s Answer to Amicus Briefs.pdf*

### A copy of the uploaded files will be sent to:

- LITacCal@atg.wa.gov
- SGOOlyEF@atg.wa.gov
- alivas@cooperkirk.com
- baker@aclu-wa.org
- berger@sgb-law.com
- ccooper@cooperkirk.com
- cruecf@atg.wa.gov
- dardeau@sgb-law.com
- devin@opensky.law
- halm@sgb-law.com
- hannah.woerner@columbialegal.org
- jalicea@cooperkirk.com
- james.mills@atg.wa.gov
- jennifer@guptawessler.com
- jmasterman@cooperkirk.com
- jmiller@fairworkcenter.org
- lane.polozola@atg.wa.gov
- laurwilson@kingcounty.gov
- marsha.chien@atg.wa.gov
- meena@meenaimmigrationlaw.com
- mendoza@sgb-law.com
- mkirk@cooperkirk.com
- mkrylov@foxrothschild.com
- roe@sgb-law.com
- slake@aclu-wa.org
- tiffany.jennings@atg.wa.gov

### Comments:

Sender Name: Ginger Rochford - Email: grochford@foxrothschild.com
   **Filing on Behalf of:** Al Levi Roundtree - Email: aroundtree@foxrothschild.com (Alternate Email: aroundtree@foxrothschild.com)

Address:
1001 Fourth Avenue
Suite 4400
Seattle, WA, 98154
Phone: (206) 624-3600

**Note: The Filing Id is 20230905163532SC562697**